THIRD DIVISION
FEBRUARY 24, 2010

No. 1-09-3598

| | | |
|---|---|---|
| FREDERICK J. HOSSFELD, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| ILLINOIS STATE BOARD OF ELECTIONS, | ) | |
| Sitting as the State Officers Electoral Board, its | ) | No. 09 COEL 060 |
| members BRYAN SCHNEIDER, chairman, and | ) | |
| members, ALBERT PORTER, JESSE SMART, | ) | |
| WANDA L. REDNOUR, ROBERT J. WALTERS, | ) | |
| PATRICK A. BRADY, WILLIAM M. | ) | |
| McGUFFAGE, and JOHN R. KEITH, and | ) | |
| STEVEN J. RAUSCHENBERGER, | ) | The Honorable |
| | ) | Edward O'Brien, |
| Respondents-Appellees. | ) | Judge Presiding. |

JUSTICE COLEMAN delivered the opinion of the court:

Petitioner-appellant, Frederick J. Hossfeld, objected to the Republican candidacy of Steven J. Rauschenberger for the State Senate on the basis that Rauschenberger was ineligible to run as a Republican because he had voted a Democratic ballot in a consolidated primary election in February 2009. Hossfeld contends that Rauschenberger's "Statement of Candidacy," which attests that Rauschenberger is a qualified primary voter of the Republican Party, was false.

Following a hearing at the Illinois State Board of Elections, the hearing examiner issued a "Report and Recommended Decision" in which she recommended that the State Officers' Electoral Board (Board) invalidate candidate Rauschenberger's nominating papers and remove his

name from the ballot at the February 2, 2010, general primary election. A tie vote of the Board resulted in Rauschenberger's name remaining on the ballot. Hossfeld petitioned for administrative review in the circuit court of Cook County. The circuit court denied Hossfeld's petition. The instant expedited appeal followed. We affirm.

BACKGROUND

On February 24, 2009, Rauschenberger voted a Democratic ballot in a consolidated primary election in Elgin Township and subsequently voted in the general township election in April 2009. On October 28, 2009, he filed his nomination papers as a Republican Party candidate for the office of State Senator for the 22nd legislative district in the February 2010 general primary election. Hossfeld filed a timely petition objecting to Rauschenberger's candidacy. See 10 ILCS 5/10-8 (West 2006). Hossfeld objected on the basis that Rauschenberger's "Statement of Candidacy" was invalid because he was not a "qualified primary voter" for the party for which he was seeking election, as required by section 8-8 of the Election Code. See 10 ILCS 5/8-8 (West 2006). In his objector's petition, Hossfeld alleged that Rauschenberger had voted a Democratic ballot in the February 2009 consolidated primary and thus is not a "qualified primary voter" for the Republican party. Hossfeld asserts that, based on *Cullerton v. Du Page County Officers Electoral Board,* 384 Ill. App. 3d 989 (2008), Rauschenberger is "locked-in" as a Democrat until he votes in the next primary on February 2, 2010.

Following the hearing on Hossfeld's objection, the examiner issued a decision and recommendation to the Board in which, primarily relying on *Cullerton*, she recommended that Rauschenberger's name be removed from the Republican ballot for the general primary election to be held on February 2, 2010. On December 10, 2009, the Board voted 4 to 4, resulting in the

2

candidate's name remaining on the ballot pending judicial review.[1]  The Board issued a written decision on December 16, 2009.  Hossfeld filed a petition for judicial review in the circuit court of Cook County on December 18, 2009.

On December 23, 2009, the circuit court denied Hossfeld's petition.  On January 4, 2010, Hossfeld sought leave to file an expedited appeal pursuant to Illinois Supreme Court Rule 311.  155 Ill. 2d R. 311.  We allowed the appeal and heard oral arguments on January 8, 2010.  On that date we issued an order affirming the circuit court's ruling and confirming the Board's decision.  We discuss our reasoning below.

## ANALYSIS

Reviewing courts view an electoral board as an administrative agency. See *Kozel v. State Board of Elections,* 126 Ill. 2d 58, 68 (1988).  We review the administrative decision, not the circuit court decision. *Most Worshipful Grand Lodge of Ancient Free & Accepted Masons v. Department of Revenue,* 378 Ill. App. 3d 1069, 1074 (2007).  Our supreme court has identified three types of questions that a court may encounter on administrative review: questions of fact, questions of law, and mixed questions of fact and law. *City of Belvidere v. Illinois State Labor Relations Board,* 181 Ill. 2d 191 (1998).  Our review of an agency's findings on questions of fact is limited to ascertaining whether such findings are against the manifest weight of the evidence since the agency's factual findings are deemed *prima facie* true and correct. *City of Belvidere,* 181

---

[1] The State Officers' Electoral Board typically consists of four Democrats and four Republicans.  The Election Code requires a majority vote by (five) Board members to invalidate nominating papers. 10 ILCS 5/10-10 (West 2006).  Our supreme court has held that a 4 to 4 decision by the Board of Elections is subject to judicial review. See *Cook County Republican Party v. Illinois State Board of Elections*, 232 Ill. 2d 231 (2009).

Ill. 2d at 204. An administrative agency's factual determinations are against the manifest weight of the evidence if the opposite conclusion is clearly evident. *City of Belvidere*, 181 Ill. 2d at 204. We review an agency's decision on a question of law *de novo*. *City of Belvidere*, 181 Ill. 2d at 205.

Mixed questions of law and fact involve situations where "the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard." *Pullman-Standard v. Swint,* 456 U.S. 273, 289 n.19, 72 L. Ed. 2d 66, 80 n.19, 102 S. Ct. 1781, 1790 n.19 (1982). An examination of the legal effect of a given set of facts is a mixed question of law and fact that is reviewed for clear error. *Cinkus v. Village of Stickney Municipal Officers Electoral Board,* 228 Ill. 2d 200, 211 (2008). The decision of an administrative agency is clearly erroneous when the reviewing court is left with the " 'definite and firm conviction that a mistake has been committed.' " *Cinkus,* 228 Ill. 2d at 211, quoting *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 393 (2001).

On appeal, Hossfeld argues that the Board and the circuit court rejected controlling precedent by failing to follow *Cullerton v. Du Page County Officers Electoral Board*, 384 Ill. App. 3d 989 (2008). Hossfeld contends that the holding in *Cullerton* is not limited to an "election cycle" and, based on that case, Rauschenberger is not a qualified primary voter of the Republican Party because the restrictions on party-switching for candidates remain in effect.

In resolving this appeal, we must examine the statutory language of section 8-8 of the Election Code (10 ILCS 5/8-8 (West 2006)), in light of *Cullerton*, to determine whether Rauschenberger is a qualified primary voter of the party for which he was seeking nomination. Although the historical facts are not in dispute, the parties disagree as to the meaning of the

statutory language and the interpretation and application of *Cullerton*. Thus, our review is *de novo*. See *Cinkus,* 228 Ill. 2d at 211; *Cullerton,* 384 Ill. App. 3d at 994.

We therefore begin by discussing section 8-8 of the Election Code, which states, in pertinent part:

"The name of no candidate for nomination shall be printed upon the primary ballot unless a petition for nomination shall have been filed in his behalf as provided for in this Section. Each such petition shall include as a part thereof the oath required by section 7-10.1 of this Act and a statement of candidacy by the candidate filing or in whose behalf the petition is filed. This statement shall set out the address of such candidate, the office for which he is a candidate, shall state that the candidate is a qualified primary voter of the party to which the petition relates, is qualified for the office specified and  *** shall be subscribed and sworn by such candidate *** and may be in substantially the following form:

\* \* \*

I, ........, being first duly sworn, say that I reside at ....... street in the city (or village of) ....... in the county of ....... State of Illinois; that I am a qualified voter therein and am a qualified primary voter of ....... party; that I am a candidate for nomination to the office of ....... to be voted upon at the primary election to be held on (insert date); that I am legally qualified to hold such office

and that I have filed a statement of economic interests as required by the Illinois Governmental Ethics Act and I hereby request that my name be printed upon the official primary ballot for nomination for such office." (Emphasis added.) 10 ILCS 5/8-8 (West 2006).

Formerly, section 8-8 contained the following restriction:

"For the purpose of determining eligibility to sign a petition for nomination or eligibility to be a candidate under this Article, a 'qualified primary' elector of a party (1) is an elector who has not requested a primary ballot of any other party at a primary election held within 2 years of the date on which the petition must be filed."

Ill. Rev. Stat. 1971, ch. 46, par. 8-8.

However, that restriction, as it pertained to petition signers, was held constitutionally invalid in *Sperling v. County Officers Electoral Board*, 57 Ill. 2d 81, 86 (1974). The *Sperling* court also held that "the restrictive provisions upon the several categories of voters are so closely related that the General Assembly would not have enacted the portion relating to candidates apart from some restrictions upon voters generally and, more particularly, those voters who desire to sign primary petitions. [Citation.] In these circumstances the restrictions upon candidates cannot be considered independent and severable from the invalid portions of the plan." *Sperling,* 57 Ill. 2d at 86.

Contrary to candidate Rauschenberger's assertion, restrictions on candidates' party-switching have not been held unconstitutional. In *Sperling*, the court stated, "[w]e believe that the standards governing party changes by candidates may and should be more restrictive than

those relating to voters generally. It seems clear to us that the State's interest in preserving the integrity of the political process will support reasonable restriction upon party-switching candidates, and the 2-year restriction in article 8 of the Election Code [citation] was upheld as it applied to candidates for the General Assembly in *Bendinger v. Ogilvie* (N.D. Ill. 1971), 335 F. Supp. 572." *Sperling*, 57 Ill. 2d 81, 84-85 (1974). The court continued, stating "[t]hat the restriction on candidates could be upheld against constitutional challenge is, however, of little help here. Such restrictions and establishment of the periods of time involved are, within constitutional limitations, matters for legislative determination." *Sperling*, 57 Ill. 2d at 86. Thus, the *Sperling* court essentially invited legislative action.

In 1990, the General Assembly amended section 8-8 of the Election Code to remove the definition of a "qualified primary elector" that included the two-year restriction on party-switching for candidates that had been invalidated in *Sperling*. Pub. Act 86–1348, eff. September 7, 1990. Accordingly, the only remaining limitation on party-switching for candidates appears to be the requirement contained in the statement of candidacy that the candidate must be a "qualified primary voter" of the party for which he is seeking nomination. See 10 ILCS 5/8-8 (West 2006). By eliminating the unconstitutional language from the Code, the legislature also removed the definition of "qualified primary voter." Compare 10 ILCS 5/8-8 (West 2006) with Ill. Rev. Stat. 1971, ch. 46, par. 8-8. Therefore, the question remains what are the restrictions on party-switching candidates, in light of the *Cullerton* court's declaration that the limitation of party-switching for candidates found in the statement of candidacy is still viable after *Sperling*. *Cullerton,* 384 Ill. App. 3d at 997.

In *Cullerton,* the court addressed the question of whether the petitioner, in that case the candidate, was a qualified primary voter of the party for which he was seeking nomination within the meaning of section 7-10 of the Election Code. *Cullerton,* 384 Ill. App. 3d 995. Thus, the question before the court in *Cullerton* was similar to the issue at bar. Although *Cullerton* interprets section 7-10 of the Election Code, sections 7-10 and 8-8 of the Code contain identical language for the form of petition for nomination. See 10 ILCS 5/7-10, 8-8 (West 2006).

In that case, the petitioner-candidate had voted Republican in the February 2008 Republican Party primary election in Du Page County. *Cullerton,* 384 Ill. App. 3d at 990. Following the 2008 primary, the Democratic 23rd Legislative District Committee selected Cullerton as its nominee for the November 2008 general election. As required by section 7-10 of the Election Code, Cullerton filed a statement of candidacy asserting that he was a "qualified primary voter" of the Democratic Party. *Cullerton,* 384 Ill. App. 3d at 991. The Du Page County Officers Electoral Board sustained an objection to Cullerton's statement of candidacy, and removed his name from the ballot. After the circuit court reversed, the Second District of the Appellate Court held that Cullerton was not eligible to be a Democratic candidate on the ballot for the November 2008 general election. *Cullerton,* 384 Ill. App. 3d at 997. The court explained that section 7-10 of the Election Code previously contained a definition of "qualified primary voter," but that language was removed by Public Act 86–1348 consistent with *Sperling*, which invalidated party-switching restrictions on petition signers. The court then construed the plain meaning of the phrase, "qualified primary voter of the party" in order to determine the legislative intent. *Cullerton,* 384 Ill. App. 3d at 996. The court found that "[t]he plain and ordinary meaning of the requirement that a candidate be a qualified primary voter of the party for which he seeks a

nomination mandates, if nothing else, that the candidate have been eligible to vote in the primary for that party in the most recent primary election preceding the candidate's filing the statement of candidacy." *Cullerton,* 384 Ill. App. 3d at 996. However, the *Cullerton* court gave no indication of the source for such a mandate. The court continued, concluding that, because the petitioner had voted in the 2006 Republican primary, he was prohibited under the code from voting in the Democratic primary in the same year. *Cullerton,* 384 Ill. App. 3d at 996, citing 10 ILCS 5/7-44 (West 2006). Accordingly, the court found that the petitioner could change his party affiliation in the next primary, but until then he was only qualified as a Republican primary voter. *Cullerton,* 384 Ill. App. 3d at 996. The court held that at all times since the 2008 primary and until the next primary in 2010, the petitioner was not a qualified primary voter of the Democratic Party and therefore his statement of candidacy attesting to the contrary was invalid. *Cullerton,* 384 Ill. App. 3d at 996.

The parties in the instant case dispute the implications of the holding in *Cullerton.* Hossfeld contends that, following *Cullerton,* Rauschenberger is "locked in" as a Democrat until <u>after</u> the February 2, 2010, general primary election when Rauschenberger may change his party affiliation by voting a Republican ballot. Hossfeld argues that then, and only then, does Rauschenberger become a qualified primary voter for the Republican Party. Hossfeld emphasizes that the *Cullerton* court stated that "the candidate [must] have been eligible to vote <u>in the primary election preceding the candidate's filing the statement of candidacy</u>." (Emphasis added.) *Cullerton,* 384 Ill. App. 3d at 996. In response, Rauschenberger argues that *Cullerton* is limited to its facts, *i.e.,* where a person votes for one party in the primary election and then seeks to be a candidate for the opposing party in the subsequent election for which that primary was held.

Rauschenberger asserts that his "Statement of Candidacy" is valid because he has not changed his party affiliation within this election cycle.

Following Hossfeld's interpretation, Rauschenberger would be unable to be a candidate for the State Senate office he is seeking until 2012, or 36 months. In giving effect to the legislative intent, the court should consider, in addition to the statutory language, the reason for the law and the problems to be remedied. See *People v. Donoho*, 204 Ill. 2d 159, 171-72 (2003). Undoubtedly, restrictions on candidates' party-switching are to protect the integrity of political parties and the electoral process. The *Cullerton* case is one example of this purpose. There, the candidate was prevented from switching parties and becoming a candidate for one party in the general election when he had voted for the opposing party in the primary for the same election. *Cullerton*, 384 Ill. App. 3d at 996. However, Illinois courts have also expressed favor for ballot access for candidates running for public office. See *In re Objection of McSparin*, 352 Ill. App. 3d 352, 257 (2004); *Forcade-Osborn v. Madison County Electoral Board*, 334 Ill. App. 3d 756, 760 (2002); *Zerante v. Bloom Township Electoral Board*, 287 Ill. App. 3d 976, 980 (1997).

Here, the situation is notably different from *Cullerton*. In the instant case, the candidate voted a Democratic ballot in a consolidated primary election after which he voted in the general township election for which that primary was held. Now, he is seeking to become a State Senate candidate in the 2010 Republican primary, which has yet to occur. This situation was not considered by the *Cullerton* court.

The current statute no longer provides express time limitations on party-switching for candidates and the only remaining restriction is that the candidate must be a qualified primary voter. See 10 ILCS 5/8-8 (West 2006). Section 7-43 of the Election Code describes persons

entitled to vote in primaries. 10 ILCS 5/7-43 (West 2006). Apart from the basic age and residency requirements contained therein, section 7-43 has very limited requirements for primary voting, including declaring your party affiliation and refraining from participating in the opposing party's activities within 45 days of the primary. See 10 ILCS 5/7-43 (West 2006). If we accord section 7-43 with the other relevant restriction on primary voting found in section 8-8 of the Election Code, that a " 'qualified primary elector' of a party may not sign petitions or be a candidate of more than one party," then we are compelled to find that he has declared his affiliation and is a qualified primary voter of the Republican Party. Therefore, we conclude that Rauschenberger's "Statement of Candidacy" is valid.

Based on the foregoing analysis, we affirm the circuit court's order denying Hossfeld's petition and confirm the Board's decision that Rauschenberger may remain on the Republican primary ballot for February 2, 2010.

Affirmed.

QUINN, J., concurs.

STEELE, J., dissents.

1-09-3598

JUSTICE STEELE, dissenting:

I respectfully dissent.

As the majority correctly notes, the issue before the court is whether Rauschenberger is a qualified primary voter of the party for which he is seeking nomination under section 8-8 of the Election Code (10 ILCS 5/8-8 (West 2006)) in light of Cullerton v. Du Page County Officers Electoral Board, 384 Ill. App. 3d 989 (2008). Our review is *de novo*. Cullerton, 384 Ill. App. 3d at 994.

I believe the circumstances presented in the instant case should yield the same result as in Cullerton.

The primary goal for a court interpreting a statute is to give effect to the intention of the legislature. Boaden v. Department of Law Enforcement, 171 Ill. 2d 230, 237 (1996); Cullerton, 384 Ill. App. 3d at 995. As the Cullerton court found, and I agree, because the statute no longer contains a definition for the phrase "qualified primary voter," we must resort to the plain language to determine the meaning of the phrase. Cullerton, 384 Ill. App. 3d at 996. Necessarily then, "the plain and ordinary meaning of the requirement that a candidate be a qualified primary voter of the party for which he seeks a nomination mandates, if nothing else, that the candidate have been eligible to vote in the primary for that party in the most recent primary election preceding the candidate's filing the statement of candidacy." Cullerton, 384 Ill. App. 3d at 996. Such a meaning is not unduly restrictive, and as the majority also notes, restrictions on candidates' party switching have not been held unconstitutional. See Sperling v. County Officers Electoral Board, 57 Ill. 2d 81, 84-85 (1974).

12

In the case at bar, Kane County voting records indicate that Rauschenberger voted as a Democrat in the 2009 primary election. Later that same year, he sought nomination as a Republican for the 2010 primary election, and filed a Statement of Candidacy in which he claimed to be a qualified primary voter of the Republican Party. Consistent with Kusper v. Pontikes, 414 U.S. 51, 38 L. Ed. 2d 260, 94 S. Ct. 303 (1973), and Cullerton, he can switch his party allegiance in the next primary, which is February 2010. See Cullerton, 384 Ill. App. 3d at 996. Until that time, however, Rauschenberger is locked in as a Democratic primary voter.

Accordingly, I would reverse the decision of the Board and remove Rauschenberger's name from the ballot.