# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *Wisnasky-Bettorf v. Pierce*, 2012 IL 111253

---

| | |
|---|---|
| Caption in Supreme Court: | WHITNEY WISNASKY-BETTORF, Appellant, v. PEGGY PIERCE *et al.*, Appellees. |
| Docket No. | 111253 |
| Filed | March 22, 2012 |
| Held <br><br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where a candidate was designated by her party after a primary in which it had no name on the ballot and there was no write-in, the Election Code requirement that a "resolution filling the vacancy" be filed within three days was not applicable, and failure to comply did not justify her exclusion from the ballot. |
| Decision Under Review | Appeal from the Appellate Court for the Fifth District; heard in that court on appeal from the Circuit Court of St. Clair County, the Hon. Andrew J. Gleeson, Judge, presiding. |
| Judgment | Judgments reversed. |

Counsel on       Brian M. Funk, of O'Fallon, for appellant.
Appeal

                 Robert J. Sprague, of Sprague & Urban, and Garrett P. Hoerner, of
                 Becker, Paulson, Hoerner & Thompson, P.C., all of Belleville, for
                 appellee.


Justices         JUSTICE FREEMAN delivered the judgment of the court, with opinion.
                 Chief Justice Kilbride and Justices Thomas, Garman, Karmeier, Burke,
                 and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1      Petitioner, Whitney Wisnasky-Bettorf, appeals from the circuit court's order sustaining petitioner's removal from the ballot for the general election held on November 2, 2010. A divided panel of the appellate court affirmed (403 Ill. App. 3d 1080), and we granted leave to appeal (Ill. S. Ct. R. 315 (eff. Feb. 26, 2010)). We now reverse the judgments of the circuit and appellate courts.


¶ 2                               Background

¶ 3      At the Republican Party's general primary election held on February 2, 2010, no candidate's name for the office of board of review for St. Clair County, Illinois, was printed on the ballot, and no candidate was nominated as a write-in for that office. Accordingly, on March 25, 2010, the St. Clair County central committee of the Republican Party (the committee) held a meeting at which it passed a motion designating petitioner as the appointee for candidacy for the office of board of review member.

¶ 4      On April 1, 2010, the committee filed a "resolution/certificate of appointment" with the county clerk of St. Clair County, indicating that the executive committee of the Republican Party in St. Clair County had voted to nominate petitioner for the office of board of review member as required pursuant to section 7-61 of the Election Code (10 ILCS 5/7-61 *et seq*. (West 2010)). On April 16, 2010, petitioner filed her nominating petitions with the clerk together with the notice of appointment, her statement of candidacy and her receipt for filing a statement of economic interests.

¶ 5      On April 26, 2010, the objector, Peggy Pierce, filed a verified objector's petition requesting that petitioner's name not appear on the ballot for election to the office of board of review member because the resolution was not filed within three days as required by section 7-61. On April 30, 2010, the St. Clair County electoral board held a hearing on the objection. At the conclusion of the hearing, the St. Clair County electoral board sustained the

-2-

objection and removed petitioner's name from the ballot for the general election to be held on November 2, 2010. In doing so, the St. Clair County electoral board stated the committee was required to file a resolution under section 7-61 in order to fill the vacancy in nomination and that this resolution was to be filed within three days after the committee's meeting on March 25, 2010.

¶ 6 On May 3, 2010, the St. Clair County electoral board entered a written decision, ordering that petitioner's name was to be removed from the ballot for the November 2, 2010, general election. On May 10, 2010, petitioner sought judicial review in the circuit court of St. Clair County, arguing that: (1) the committee was not required to file a resolution under section 7-61 in order for petitioner to fill the general primary vacancy, and (2) even if the committee were required to file a resolution, the objections in this case were untimely.

¶ 7 On June 2, 2010, the circuit court held a hearing on the petition. Petitioner asked the court for relief, specifically to have her name placed back on the ballot for that election. At the conclusion of the hearing, the circuit court confirmed the decision of the St. Clair County electoral board.

¶ 8 A divided panel of our appellate court affirmed, holding section 7-61 required the filing of a resolution under the circumstances. 403 Ill. App. 3d 1080. The dissenting justice concluded that the amended portion of section 7-61 sets forth a distinct procedure for situations such as the case at hand and specifically substitutes a "notice of appointment" for the filing of a resolution. 403 Ill. App. 3d at 1091 (Spomer, J., dissenting). Petitioner seeks reversal of the judgment of the appellate court.

¶ 9                                                      ANALYSIS

¶ 10                                                     Mootness

¶ 11 We must initially address the contention that this matter is moot given that the November 2010 election has already occurred and the petitioner does not request a new election if she were to prevail in this appeal.

¶ 12 One exception to the mootness doctrine allows a court to resolve an otherwise moot issue if the issue involves a substantial public interest. Petitioner invokes this exception specifically requesting that this court clarify this area of the law for future elections. The criteria for application of the public interest exception are: (1) the public nature of the question, (2) the desirability of an authoritative determination for the purpose of guiding public officers, and (3) the likelihood that the question will recur. *In re A Minor*, 127 Ill. 2d 247, 257 (1989); *People ex rel. Wallace v. Labrenz*, 411 Ill. 618, 622 (1952). A clear showing of each criterion is required to bring a case within the public interest exception. See *Kohan v. Rimland School for Autistic Children*, 102 Ill. App. 3d 524, 527 (1981).

¶ 13 The present case meets this test. Issues regarding the filling of vacancies in nomination of a public office are of substantial public interest. The appellate court correctly observed that issues regarding this subject are long-standing and have not been addressed by courts or

the legislature (*Phelan v. County Officers Electoral Board*, 240 Ill. App. 3d 368, 371, 381 (1992)). See *Thurston v. State Board of Elections*, 76 Ill. 2d 385, 387-88 (1979); Administrative Office of the Illinois Courts, 1981 Annual Report to the Supreme Court of Illinois 22. An authoritative guide for future controversies is needed; the issue will likely recur. We therefore will address the merits of this cause.

¶ 14                                                          Election Code

¶ 15        The question before us is whether an established political party must file a resolution pursuant to section 7-61 of the Election Code (10 ILCS 5/7-61 (West 2010)) in order to fill a vacancy in nomination when no candidate appeared on the primary ballot and no write-in candidate was nominated. Regarding our standard of review, factual findings made by an electoral board will not be disturbed unless they are against the manifest weight of the evidence. *Girot v. Keith*, 212 Ill. 2d 372, 378-79 (2004). We are not bound, however, by the board's interpretation of a statute. *King v. Justice Party*, 284 Ill. App. 3d 886, 888 (1996). The construction of a statute is a question of law, which we review *de novo*. *Sylvester v. Industrial Comm'n*, 197 Ill. 2d 225, 232 (2001).

¶ 16        The primary rule of statutory interpretation and construction, to which all other canons and rules are subordinate, is to ascertain and effectuate the true intent and meaning of the legislature. *People ex rel. Hanrahan v. White*, 52 Ill. 2d 70, 73 (1972). In interpreting a statute, a court must give the legislative language its plain and ordinary meaning. *Illinois Power Co. v. Mahin*, 72 Ill. 2d 189 (1978). If the language of the statute is plain, clear, and unambiguous, and if the legislative intent can be ascertained therefrom, it must prevail and will be given effect by the courts without resorting to other aids for construction. *In re Marriage of Logston*, 103 Ill. 2d 266 (1984). Also, the statute should be evaluated as a whole; each provision should be construed in connection with every other section. *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 397 (1994). Statutes should be construed, if possible, so that no term is rendered superfluous or meaningless. *Bonaguro*, 158 Ill. 2d at 397.

¶ 17        The objection in this case was based on section 7-61 of the Election Code. We note that section 7-61 consists of multiple paragraphs which address different circumstances in which vacancies in nomination occur. According to the objection, section 7-61 requires the filing of a resolution in this case. In so arguing, the objector relied upon paragraph 3, which states:

> "Any vacancy in nomination under the provisions of this Article 7 occurring on or after the primary and prior to certification of candidates by the certifying board or officer, must be filled prior to the date of certification. Any vacancy in nomination occurring after certification but prior to 15 days before the general election shall be filled within 8 days after the event creating the vacancy. The resolution filling the vacancy shall be sent by U.S. mail or personal delivery to the certifying officer or board within 3 days of the action by which the vacancy was filled; provided, if such resolution is sent by mail and the U.S. postmark on the envelope containing such

resolution is dated prior to the expiration of such 3 day limit, the resolution shall be deemed filed within such 3 day limit. Failure to so transmit the resolution within the time specified in the Section shall authorize the certifying officer or board to certify the original candidate. Vacancies shall be filled by the officers of a local municipal or township political party as specified in subsection (h) of Section 7-8, other than a statewide political party, that is established only within a municipality or township and the managing committee (or legislative committee in case of a candidate for State Senator or representative committee in the case of a candidate for State Representative in the General Assembly or State central committee in the case of a candidate for statewide office, including but not limited to the office of United States Senator) of the respective political party for the territorial area in which such vacancy occurs." 10 ILCS 5/7-61 (West 2010).

In response, petitioner maintains that paragraph 3 does not apply to the situation present in this case—where no name had appeared on the primary ballot—and that paragraph 9 controls in such situations. We agree.

¶ 18      The plain language of section 7-61, when read in its entirety, reveals that paragraph 3, quoted above, does not apply where no established political party candidate was printed on the general primary ballot for a particular office and no person was nominated as a write-in candidate at the general primary election. Rather, paragraph 3 applies to situations where a candidate has been nominated at the primary and a vacancy in nomination occurs as a result of the death or resignation of that person nominated. There are four paragraphs in section 7-61 which address the "resolution to fill the vacancy": paragraphs 3, 4, 5, and 6. There is language in two of those paragraphs that makes it clear that the filing of the resolution refers to situations where a candidate was nominated at a primary. For example, the fourth sentence in paragraph 3 states: "Failure to so transmit the resolution within the time specified in this Section shall authorize the certifying officer or board to certify the original candidate." 10 ILCS 5/7-61 (West 2010). Moreover, paragraph 4 of the statute, which sets forth the information that must be included in the resolution, states:

> "The resolution to fill a vacancy in nomination shall be duly acknowledged before an officer qualified to take acknowledgments of deeds and shall include, upon its face, the following information:
>
> (a) the name of the original nominee and the office vacated;
>
> (b) the date on which the vacancy occurred;
>
> (c) the name and address of the nominee selected to fill the vacancy and the date of selection." 10 ILCS 5/7-61 (West 2010).

These references to the "original candidate" and the "original nominee" make no sense in cases such as this where no original candidate or nominee existed.

¶ 19      In contrast, paragraph 9 specifically sets forth the procedure to be followed in situations such as those here, *i.e.*, where no name was put forth on the primary ballot and no write-in

candidate was nominated by primary voters. Paragraph 9 states:

> "If the name of no established political party candidate was printed on the consolidated primary ballot for a particular office and if no person was nominated as a write-in candidate for such office, a vacancy in nomination shall be created which may be filled in accordance with the requirements of this Section. If the name of no established political party candidate was printed on the general primary ballot for a particular office and if no person was nominated as a write-in candidate for such office, a vacancy in nomination shall be filled only by a person designated by the appropriate committee of the political party and only if that designated person files nominating petitions with the number of signatures required for an established party candidate for that office within 75 days after the day of the general primary. The circulation period for those petitions begins on the day the appropriate committee designates that person. The person shall file his or her nominating petitions, statements of candidacy, notice of appointment by the appropriate committee, and receipt of filing his or her statement of economic interests together. The electoral boards having jurisdiction under Section 10-9 to hear and pass upon objections to nominating petitions also shall hear and pass upon objections to nomination petitions filed by candidates under this paragraph." 10 ILCS 5/7-61 (West 2010).

¶ 20    We note that the current paragraph 9 was amended in 2009. The amendment, which went into effect on January 1, 2010, added specific requirements for a vacancy in nomination when no established political party candidate was printed on the general primary ballot.[1]

¶ 21    In such situations, paragraph 9 provides that the vacancy in nomination may be filled only when the following four conditions are met: (1) the person to fill the vacancy in nomination has been "designated by the appropriate committee of the political party" in question, (2) the designated person obtains nominating petitions with the number of signatures required for an established party candidate for that office, with the circulation period to begin "on the day the appropriate committee designates that person," (3) the designated person has filed, together, the following required documents, within 75 days after the day of the general primary: "his or her nominating petitions, statements of candidacy, notice of appointment by the appropriate committee, and receipt of filing his or her statement

---

[1]A review of the preamended version of paragraph 9 of section 7-61 reinforces our interpretation. We provide it as a means of comparison:

> "If the name of no established political party candidate was printed on the consolidated primary ballot for a particular office and if no person was nominated as a write-in candidate for such office, a vacancy in nomination shall be created which may be filled in accordance with the requirements of this Section. If the name of no established political party candidate was printed on the general primary ballot for a particular office and if no person was nominated as a write-in candidate for such office, a vacancy in nomination shall be created, but no candidate of the party for the office shall be listed on the ballot at the general election unless such vacancy is filled in accordance with the requirements of this Section within 60 days after the date of the general primary."10 ILCS 5/7-61 (West 2008).

of economic interests," and (4) "[t]he electoral boards having jurisdiction under Section 10-9 to hear and pass upon objections to nominating petitions also shall hear and pass upon objections to nomination petitions filed by candidates under [paragraph 9]." 10 ILCS 5/7-61 (West 2010). We note that the requirement that the candidate who is filling a vacancy created by reason of a lack of candidate on the primary ballot must file nomination petitions with the number of signatures required for an established party is inconsistent with the requirements set forth in paragraphs 3 through 8, which do not require that nomination petitions be filed. Finally, paragraph 9 does not include the word "resolution"; thus it is reasonable to conclude that paragraph 9 does not require the filing of a resolution in the case at bar.

¶ 22    The amended language of paragraph 9 makes clear that the legislature intended that in situations where there is no original candidate on the ballot and no write-in, a candidate must now show, basic level, "grassroots" support by complying with the requirements in paragraph 9 that were not previously included in paragraph 9 prior to the amendment. To hold otherwise would be clearly against the legislative intent in making this amendment and against this state's position in favor of ballot access for candidates running for public office. See *Hossfeld v. Illinois State Board of Elections*, 398 Ill. App. 3d 737, 743 (2010).

¶ 23    Our conclusion that paragraph 3 does not apply to a vacancy created by reason of a lack of candidate on the primary ballot is further strengthened by the legislative history of Public Act 86-809, which amended paragraph 9. The statements from the House debate indicate that the legislature intended to provide specific requirements exclusive to a candidate who fills a vacancy when no one was nominated in the primary to serve as that party's candidate nomination. 96th Ill. Gen. Assem., House Proceedings, April 2, 2009, at 7, 10 (statements of Representatives Fortner and Graham). These same comments further reveal that the legislature viewed the requirements in paragraphs 3 through 8 to apply to those candidates who fill a vacancy when there was a candidate on the primary ballot. *Id.*

¶ 24    Finally, we note that the appellate court relied upon *dicta* contained in *Forcade-Osborn v. Madison County Electoral Board*, 334 Ill. App. 3d 756, 759 (2002). However, *Forcade-Osborn* was decided prior to the amendment of paragraph 9, and whatever persuasiveness *Forcade-Osborn*'s *dicta* might have once had is now extinguished.

¶ 25                              CONCLUSION

¶ 26    For the foregoing reasons, the judgments of the circuit and appellate courts are reversed.

¶ 27    Judgments reversed.